CHARLES L. ROWE v. FRANKLIN COUNTY, BOARD OF COMMISSIONERS OF FRANKLIN COUNTY, FRANKLIN MEMORIAL HOSPITAL, BOARD OF TRUSTEES OF FRANKLIN MEMORIAL HOSPITAL, JAMES S. HUNT, INDIVIDUALLY AND AS CHAIRMAN OF BOARD OF COMMISSIONERS OF FRANKLIN COUNTY AND BOARD OF TRUSTEES OF FRANKLIN MEMORIAL HOSPITAL, JAMES S. WEATHERS, RONALD W. GOSWICK, J. THURMAN GRIFFIN, BENNIE R. GUPTON, AND JAMES W. MILLS, INDIVIDUALLY AND AS COUNTY MANAGER OF FRANKLIN COUNTY

No. 164A86

(Filed 7 October 1986)

1. **Hospitals § 2.1— authority of trustees—divested by county commissioners—employment contract by trustees—unauthorized—not ultra vires**

An employment contract with plaintiff entered into by the board of trustees of the Franklin Memorial Hospital was not *ultra vires*, but was unauthorized, where the board of trustees was created by the Franklin County Board of Commissioners on 5 January 1948 with full authority to employ personnel for the proper operation of the hospital; the commissioners voted on 6 June 1983 for the management of the hospital by the Hospital Corporation of America; and the trustees, after learning of the commissioners' resolution and letter agreement with HCA, voted on 15 June 1983 to contract with Carolinas Hospital and Health Services, Inc. for management services for the hospital and with plaintiff as the hospital administrator. The June 6 resolution manifested the commissioners' intent to divest the trustees of the delegated authority to make long-term management decisions on behalf of the hospital, and the trustees as agents of the commissioners thus had no authority to enter into a long-term employment contract with plaintiff. N.C.G.S. § 131-126.21(b) (1981).

2. **Principal and Agent § 5.1— employment contract—beyond hospital trustees' apparent authority**

Summary judgment was properly entered for defendants in an action for damages for breach of plaintiffs' employment contract as a hospital administrator where a reasonably prudent person in plaintiff's position would not have been justified in believing that the trustees had authority to enter into long-term employment contracts on behalf of the hospital.

APPEAL by plaintiff pursuant to N.C.G.S. 7A-30(2) from the decision of a divided panel of the Court of Appeals, reported in 79 N.C. App. 392, 339 S.E. 2d 428 (1986), affirming judgment entered by *Barnette, J.*, at the 29 April 1985 session of Superior Court, FRANKLIN County. Heard in the Supreme Court 9 September 1986.

Plaintiff filed this action for damages alleging, inter alia, breach of a written contract of employment with defendant Franklin Memorial Hospital. The trial court entered summary

judgment on all issues in favor of defendants, and the Court of Appeals affirmed, with Wells, J., dissenting on grounds that plaintiff should have been granted summary judgment on the issue of breach of the employment contract.

*Hollowell & Silverstein, P.A., by Thaddeus B. Hodgdon, for plaintiff-appellant.*

*Bailey, Dixon, Wooten, McDonald, Fountain & Walker, by J. Ruffin Bailey and Gary S. Parsons, and Jolly, Williamson & Williamson, by Wilbur M. Jolly, for defendant-appellees.*

MARTIN, Justice.

Having carefully examined the materials before the trial court on the parties' respective motions for summary judgment, we have determined that summary judgment was properly entered for defendants. Except as modified herein, we affirm the decision of the Court of Appeals.

[1] The undisputed evidence establishes that in accordance with Chapter 131, Article 13B of the 1947 Session Laws of North Carolina, the Franklin County Board of Commissioners created by resolution the Franklin Memorial Hospital and the Board of Trustees of Franklin Memorial Hospital on 5 January 1948. This resolution vested the board of trustees "with full authority to employ an architect, select a site and for the planning, establishment, construction, maintenance, and to employ such other personnel as are necessary for the proper operation of said Hospital . . . ." *See generally* N.C.G.S. §§ 131-126.20, .21(a) (1981). The board of trustees operated the hospital under this authority for many years, and on 22 October 1981 hired plaintiff under an oral contract to be administrator of the hospital for an undetermined period of time. On 21 December 1982 the Franklin County Board of Commissioners adopted a resolution stating its intent to transfer management, operation, and control of the hospital to a nonprofit, tax-exempt corporation to be formed in 1983. The terms of eight of the nine trustees had expired or were about to expire when this resolution was adopted, and so the commissioners notified the outgoing trustees of the commissioners' intention to reorganize the hospital's management. The outgoing trustees' terms were extended during this transitional period.

On 21 March 1983, the commissioners adopted a resolution inviting Carolinas Hospital and Health Services, Inc. (CHHS) and Hospital Corporation of America (HCA) to submit proposals for management of the hospital to the commissioners. This resolution provided that such proposals were to be submitted at a specially called meeting of the commissioners to which the trustees, medical staff of the hospital, and plaintiff were invited. On 23 May 1983 the commissioners, trustees, and plaintiff met with representatives of CHHS and HCA to receive the proposals submitted. Both proposals provided that the administrator of the hospital would be an employee of the management company selected.

On 6 June 1983 the commissioners unanimously voted to contract with HCA for the management of the hospital. In a letter agreement dated 10 June 1983, the commissioners and HCA agreed that HCA would supply an interim administrator, if requested, to assist in the provision of management services to the hospital pending negotiation and signing of a final, long-term contract between the commissioners and HCA. At a specially called meeting at 7:30 p.m. on 15 June 1983, after learning of the commissioners' resolution and letter agreement with HCA, and in the presence of plaintiff, the trustees adopted a resolution stating their intent to contract with CHHS for management services for the hospital. At this 15 June 1983 meeting the trustees also purported to enter into a written three-year employment contract with plaintiff under which plaintiff was to act as hospital administrator. In a specially called meeting at 9:00 p.m. on 15 June 1983, the commissioners voted to revoke the purported contract that the trustees had entered into with CHHS. On 27 June 1983 the board of commissioners entered a resolution expressly repealing, inter alia, those sections of the 1948 resolution which had vested authority to operate and manage the hospital in the trustees, and stating that all authority to plan, establish, construct, maintain and operate the hospital would now be vested in the commissioners, who would also serve as the trustees of the hospital. On 1 July 1983 this new board of trustees of the hospital voted to fire plaintiff as administrator of the hospital; the trustees also requested HCA to provide immediately an interim administrator for the hospital. By letter dated 11 July 1983, plaintiff was notified in writing by the chairman of the board of trustees that his employment as administrator of the hospital was terminated.

Plaintiff contends that the hospital, through the trustees then in power, entered into an enforceable written contract of employment with him on 15 June 1983 and that the hospital, through the commissioners (and later, as new trustees), breached this contract by firing him before the end of the term specified in the contract. In affirming summary judgment for defendants the Court of Appeals reasoned that by their 6 June 1983 resolution to contract with HCA, the commissioners revoked by implication the power of the trustees to enter into a long-term contract with any party concerning the management of the hospital. The Court of Appeals stated that because the trustees therefore had no authority to enter into a long-term employment contract with plaintiff on 15 June 1983, the purported contract "is thus *ultra vires* and void." We agree that the trustees had no authority to enter into the written contract with plaintiff on 15 June 1983, but, as explained below, we reject the incorrect statement of the Court of Appeals that the contract was ultra vires.

The Court of Appeals correctly stated that under N.C.G.S. § 131-126.21(a) the board of commissioners had authority to delegate its management authority over the hospital to the trustees and properly did so pursuant to the resolution entered in 1948. *See Simmons v. Elizabeth City*, 197 N.C. 404, 149 S.E. 375 (1929). N.C.G.S. § 131-126.21(a) also authorized the commissioners to set and limit the scope of authority delegated to the trustees. This authority to delegate power includes the authority to amend and revoke any power delegated. *City of Salisbury v. Arey*, 224 N.C. 260, 29 S.E. 2d 894 (1944). *See Swain County v. Sheppard*, 35 N.C. App. 391, 241 S.E. 2d 525 (1978). We hold that in the instant case the resolution of the commissioners dated 6 June 1983 revoked the authority of the trustees, effective that date, to enter into long-term contracts concerning the management of Franklin County Hospital.

Although the 6 June resolution does not state expressly that it revokes authority granted to the trustees in 1948, the clear implication of its language demonstrates the commissioners' intent to revoke the trustees' authority to enter into long-term management contracts on behalf of the hospital. In determining whether an ordinance or resolution has been repealed by implication, we look to the intent of the commissioners, bearing in mind that a presumption against intent to repeal exists "where express terms

are not used, and where both statutes [or resolutions or ordinances] by any reasonable construction can be declared to be operative without obvious or necessary repugnancy." *State v. Lance*, 244 N.C. 455, 457, 94 S.E. 2d 335, 337 (1956). *Cf. Clark v. City of Charlotte*, 66 N.C. App. 437, 311 S.E. 2d 71 (1984) (rules of construction applicable to statutes generally apply to county and municipal ordinances). "However, if two statutes are truly irreconcilably in conflict it is logical that the later statute should control, resulting in a repeal of the earlier statute." *State v. Greer*, 308 N.C. 515, 518, 302 S.E. 2d 774, 777 (1983). "A portion of an act may . . . be repealed by implication." *State v. Lance*, 244 N.C. at 457, 94 S.E. 2d at 337.

We agree with the Court of Appeals that the language of the 6 June resolution declaring that HCA will be the new manager of the hospital logically conflicts with the 1948 resolution insofar as the latter conferred authority on the trustees to enter into long-term employment contracts with respect to the management of the hospital. Under the circumstances, the 6 June resolution choosing HCA over CHHS clearly showed the commissioners' intent to exercise their authority to decide how the hospital would be managed in the future. By so resolving, the commissioners manifested their intent to divest the trustees of the delegated authority to make long-term management decisions on behalf of the hospital. Therefore, the resolution of 6 June 1983 impliedly repealed that part of the resolution of 1948 which had delegated authority to the trustees to enter into long-term contracts regarding management of Franklin Memorial Hospital. Thus, on 15 June 1983 the trustees had no authority to enter into a long-term contract of employment with plaintiff. *Cf.* N.C.G.S. § 131-126.21(b) (1981) (body to which county commissioners delegate authority to maintain and operate hospital "shall exercise only such powers and duties as are prescribed in the resolution of the board of county commissioners granting and vesting such authority and powers in said [body]"). However, the fact that the trustees had no authority to enter into an enforceable long-term employment contract on behalf of the hospital does not mean that the contract was ultra vires.

An act by a private or municipal corporation is ultra vires if it is beyond the purposes or powers expressly or impliedly conferred upon the corporation by its charter and relevant statutes

and ordinances. *See Moody v. Transylvania County,* 271 N.C. 384, 156 S.E. 2d 716 (1967); *Madry v. Scotland Neck,* 214 N.C. 461, 199 S.E. 618 (1938). If a corporation has authority under statute and charter to enter into a particular kind of contract, the fact that an agent of the corporation purports to bind the corporation without permission of the corporation does not make this act ultra vires. It merely makes this particular act one that the corporation has not authorized, even though other such acts by proper corporate agents would be binding on the corporation. In the instant case it is indisputable that the commissioners had statutory authority to enter into employment contracts on behalf of the hospital with managers and administrators of the hospital. *See* N.C.G.S. §§ 131-98(a)(8), -126.18(1), .20(c), .29 (1981). There is also no question that this authority had been properly delegated to and exercised by the trustees when they hired plaintiff under an oral employment contract in 1981. Hiring management employees is not an ultra vires act under the facts of this case. *Compare Moody v. Transylvania County,* 271 N.C. 384, 156 S.E. 2d 716 (provision of ambulance service was ultra vires the lawful authority granted to county commissioners); *Madry v. Scotland Neck,* 214 N.C. 461, 199 S.E. 618 (municipality's offer of reward was ultra vires authority granted by statute); *Burgin v. Smith,* 151 N.C. 561, 66 S.E. 607 (1909) (contract by county commissioners for building and repair of courthouse for $6500 was ultra vires statutory authority of commissioners to contract debt only up to $5000). Of course, if it had been ultra vires, the purported contract between the hospital and plaintiff would have been void and could not have been ratified by the corporation or enforced by plaintiff on grounds of estoppel. *Id.*[1] *See Central Transp. Co. v. Pullman's Car Co.,* 139 U.S. 24, 59-60, 35 L.Ed. 55, 68 (1890).

---

1. The harshness of the defense of ultra vires is predicated on the rule that those dealing with a municipal corporation are held to know the extent of the corporation's authority because the scope of such authority is a matter of public record. *See generally, e.g.,* 18B Am. Jur. 2d *Corporations* § 2002 (1985) ("Obligation of Member of Public to Take Notice of Extent of Corporation's Powers"); 10 E. McQuillin, *Municipal Corporations* § 29.04 (1981 & Supp. 1985) ("Notice Imputed to One Contracting With Municipality"); Comment, *Chemical Bank v. Washington Public Power Supply System: An Aberration in Washington's Application of the Ultra Vires Doctrine,* 8 U. Puget Sound L. Rev. 59, 62-65 (1984). Although ultra vires is permitted only to a limited extent as a defense by private corporations to actions based on contract brought by third parties, *see* N.C.G.S. § 55-18 (1982); *Piedmont Aviation v. Motor Lines,* 262 N.C. 135, 136 S.E. 2d 658 (1964); *Everette v.*

[2] Under the facts of the present case, because of the commissioners' 6 June resolution, the trustees' attempt to enter into an employment contract which would be binding upon the hospital was, under the law of agency, without actual authority. *See generally, e.g., Research Corp. v. Hardware Co.*, 263 N.C. 718, 140 S.E. 2d 416 (1965). However, the issue remains whether, despite the trustees' lack of actual authority, the contract is enforceable on grounds that in signing the contract on behalf of the hospital, the trustees held out to plaintiff apparent authority to act on behalf of the hospital.[2] *See Colyer v. Hotel Co.*, 216 N.C. 228, 4 S.E. 2d 436 (1939) (applying doctrine of apparent authority to facts concerning alleged breach of employment contract). "When a corporate agent acts within the scope of his apparent authority, and the third party has no notice of the limitation on such authority, the corporation will be bound by the acts of the agent . . . ." *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 30, 209 S.E. 2d 795, 799 (1974). *Accord, e.g., Lucas v. Stores*, 289 N.C. 212, 221 S.E. 2d 257 (1976). *Cf.* 10 E. McQuillin, *Municipal Corporations* § 29.10 (1981 & Supp. 1985) (discussing cases where recovery by third parties allowed against public entity that was authorized to contract for the services provided but had improperly executed its authority); Comment, *Chemical Bank v. Washington Public Power Supply System: An Aberration in Washington's Application of the Ultra Vires Doctrine*, 7 U. Puget Sound L. Rev. 59, 65-72 (1984) (same). "[T]he determination of a principal's liability in any particular case must be determined by what authority the third person in the exercise of reasonable care was justified in believing that the principal had, under the circumstances, conferred upon his agent." *Zimmerman v. Hogg & Allen*, 286 N.C. at 31, 209 S.E. 2d at 799.

> "If the facts and circumstances of the particular case reveal that an ordinarily prudent [person] would have been put on notice that one with whom he was dealing was not acting within the apparent scope of his authority, the principal is not bound under well-settled principles of agency law."

*Lumber Co.*, 250 N.C. 688, 110 S.E. 2d 288 (1959); R. Robinson, *North Carolina Corporation Law* § 3-14 (3d ed. 1983), in many jurisdictions it is permitted much more freely when raised as a defense by a municipal corporation. *See* 10 E. McQuillin, *Municipal Corporations* § 29.104c (1981 & Supp. 1985).

2. Under our analysis of the appeal, we find it necessary to address this issue although it was not argued by the parties.

*Id.* (quoting 2 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 434, at 307 (perm. ed. 1931) ). Therefore we turn to the question whether there is any material issue of fact whether an ordinarily prudent person exercising reasonable care in plaintiff's position would have been justified in believing that on 15 June 1983 the trustees continued to have authority to enter into long-term employment contracts on behalf of the hospital. We conclude that such a belief by an ordinarily prudent person would not have been justified and therefore the contract is not enforceable under principles of apparent authority.[3]

Although the trustees had hired plaintiff in 1981 under an oral contract of employment, plaintiff was undeniably aware of the friction between the commissioners and trustees during 1983 concerning the future management of the hospital: he was present at the 23 May 1983 meeting of the commissioners and trustees when proposals were received from CHHS and HCA and was aware of the commissioners' resolution of 6 June to contract with HCA shortly after it was entered. Eleven copies of the interim agreement of 10 June 1983 between the commissioners and HCA were hand delivered to plaintiff on 14 June 1983 by the County Manager of Franklin County. We hold that a reasonably prudent person in plaintiff's shoes would not have been justified in believing that on 15 June 1983 the trustees continued to have authority to enter into long-term employment contracts on behalf of the hospital. Therefore, there is no merit to the theory that any of the defendants were contractually bound to plaintiff under the doctrine of apparent authority.

Under the facts of this case plaintiff was merely an employee at will of the hospital when his employment was terminated. *See, e.g., Smith v. Ford Motor Co.,* 289 N.C. 71, 80, 221 S.E. 2d 282, 288 (1976). Summary judgment was properly entered for defendants.

The decision of the Court of Appeals is

Modified and affirmed.

---

3. In passing, we note that in an action to enforce a contract it may be appropriate to reply to a defense of lack of authority with an allegation of estoppel. *See* N.C.R. Civ. P. 8(c) (estoppel is an affirmative defense). Plaintiff did not do so in the instant case.